CENTRAL PASTO VIEJO, INC., PLAINTIFF AND APPELLEE, *v.* ROIG ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in an Action for Legal Redemption.

No. 3205.—Decided June 27, 1924.

COMMON PROPERTY—REDEMPTION—DIVISION.—In the division of a property held in common all of the co-owners should participate.

ID.—ID.—CONDITIONS OF SALE.—In accordance with the statute a property can be redeemed only when the co-owner can be subrogated to the grantee ''with the same conditions stipulated in the contract.'' The statute protects the rights of all alike. The preference given to a co-owner is fair. But it would be unfair if in order to secure that preference the ownership right of the other co-owners should be reduced to making only contracts in which subrogation under the same conditions is possible. The right of co-owners to sell their interests under the best conditions is absolute. Their right of redemption is limited by the language of the statute. Only when fraud is alleged and proved, or in the case of an unreasonable or imaginary condition beyond the usual transactions of men, or other similar situation, can the condition be considered as not imposed.

ID.—ID.—ID.—Co-owner *A* sold his condominium to *B* on the condition that the grantee should lease one of his properties to the grantor and transferred the lease to co-owner *C*. *Held:* That although perhaps before the transfer of the lease *C* was not in a position to redeem from *B*, the difficulty was removed when he acquired the lease, the essential condition of the sale from *A* to *B*.

The facts are stated in the opinion.

*Messrs. González Fagundo & González, Jr., L. Pereyó* and *A. Aponte, Jr.,* for the appellants.

*Messrs. H. G. Molina* and *R. Cuevas Zequeira* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for legal redemption. The complaint

was sustained by the lower court and the defeated party, defendant Roig, appealed to this Supreme Court. In his brief he assigns several errors which we have studied carefully. Some of them are of no importance. In our opinion the case involves only three questions worthy of consideration, *i. e.,* whether or not the property had been divided; whether or not under the terms of the contract of sale made by defendant Roig plaintiff Central Pasto Viejo can be subrogated to his place, and the deposit.

We shall begin by narrating the facts in the clearest, shortest and most concrete manner possible. In discussing the questions involved we shall refer to other facts which complement the general narration now to be made.

The property involved is a farm property called Rosario situated in Anton Ruiz ward of the municipality of Humacao. In the registry it is described as containing 200 acres. According to a plan offered in evidence it has 175.789 acres.

In 1903 the said property was recorded in the Registry of Property of Humacao as belonging to Rosario Mandry and her seven children named Juan, Arturo, María, Ana, Luis, Rafael and José Frías y Mandry by title of inheritance from their husband and father, Francisco Frías y Aguilar, one-half in the name of the widow and one-fourteenth in the name of each of the children, they holding it in undivided common.

In the same year of 1903 José Toro Ríos had recorded in his name the shares of five of the children (Juan, Arturo, Ana, Luis and Rafael) and one-seventh of the share of Rosario Mandry by title of purchase, Toro Ríos thus becoming the owner of one-half of the said property.

In 1905 Rosario Mandry died intestate. It appears that nothing was done with regard to her estate until 1923 when her children Ana, Luis, Rafael, Arturo, Ramón, María and José were designated as her heirs. There are seven children and their names coincide with those entered in the

registry in 1903 except Ramón, who is undoubtedly the Juan of 1903.

In 1908 co-owner José Frías y Mandry sold to Luis Recurd, the husband of co-owner María Frías, his entire interest in the property consisting of the one-fourteenth inherited from his father and the one-seventh of five-fourteenths (one-sixth is said) inherited from his mother. When the deed was presented in the registry for record the registrar recorded it only as to the sale of the joint interest of one-fourteenth and not as to the other share, because it was still recorded in the name of Rosario Mandry.

In the same year of 1908 Luis Recurd and his wife, María Frías y Mandry, by a notarial deed, sold to Miguel Bustelo and his wife a farm property described as a tract of 69 acres in Anton Ruiz ward of the Municipality of Humacao. One clause of the deed reads as follows:

"2nd.—That the property described was acquired by them in the following manner: A part was inherited by María Frías from her parents and another part was purchased from José Frías y Mandry and others, it being still recorded in the name of Rosario Mandry and forming part of another larger property held in undivided common with José Toro Ríos, and although it is true that the physical division of the property has been made, the corresponding deed has not been executed."

The word "others" seems to be used to embrace the interest of the *other* children acquired by maternal inheritance, except Rafael who in 1911 sold his maternal share to Antonio Torres. In 1912 Torres transferred it to the Borinquen Sugar Company and finally plaintiff Central Pasto Viejo became the owner of it.

The deed of sale from the Recurd-Frías spouses to Bustelo has not been recorded in the registry of property. Likewise, the transfers of the common interest acquired by Rafael Frías by maternal inheritance, that is, the condominium now owned by the plaintiff, have not been recorded, although notes of them have been entered.

On December 23, 1922, the Bustelo consorts agreed to sell various properties to defendant Antonio Roig. One clause of the contract reads as follows:—

"It is an essential condition of this contract that the Bustelo spouses shall sell also to Roig the Rosario property of 69 acres, more or less, situated in the ward of Anton Ruiz of Humacao at the price of $195 per acre. This price is subject to a survey of the land and is fixed under the same stipulation of warranty as that agreed upon for the other properties involved in this contract.

"In consideration of the sale by the Bustelo spouses to Roig of the Rosario property the said spouses exact as an essential condition of the said sale, in addition to all of the preceding stipulations, that Roig shall lease to the said spouses a tract of 100 acres that Roig shall segregate from his Pitajaya property of Bejuca fronting on the public road running from Humacao to the Playa, for a period of ten years at $7.00 per acre yearly and the taxes."

The plaintiff becoming aware of the contract of December 23, 1922, on the 30th of that month it filed the complaint for redemption in this action and a motion which reads in part as follows:

"That in the custody of the clerk of the District Court of Humacao the plaintiff has deposited on this date the sum of Twelve Thousand Dollars which more than covers the amount of the selling price of a certain parcel of land that the plaintiff seeks to redeem by means of this action for legal redemption.

"That the said parcel of land was sold for the sum of $11,018.09 and the plaintiff estimates $981.91 as the amount of the expenses of the contract and of any other lawful disbursements that may have been made by the defendants.

"Therefore, the plaintiff prays the court to admit the said complaint and consider the deposit of the sum of Twelve Thousand Dollars as made, allowing the matter to be proceeded with in the manner provided by law."

The court approved the deposit and the case was proceeded with until on August 13, 1923, the court rendered the judgment appealed from sustaining the complaint.

With regard to what law governs this case there is no dispute between the parties, they agreeing that it is con-

tained in sections 1424 and 1425 of the Civil Code, as follows:

"Sec. 1424.—Legal redemption is the right to be subrogated with the same conditions stipulated in the contract, in the place of the person who acquires a thing by purchase or in payment of a debt.

"Sec. 1425.—A co-owner of a thing held in common may exercise the redemption in case the shares of all the other co-owners, or of any of them, are sold to a third party.

"When two or more co-owners wish to exercise the redemption, they shall only do so pro rata with regard to the share they have in the thing owned in common."

The controversy is on the weighing of the facts and the interpretation of the law applied to the particular case.

Is the Rosario property undivided? The plaintiff contends that it is and the trial court upheld its contention. The defendant maintained in the lower court and now insists on appeal that the property was divided physically among the joint owners.

The records of the registry show that the property was owned in undivided common. We have already referred to the record in the names of Rasorio Mandry and her children and to the sales of certain joint interests, and now we will say that, according to the certificate of the registrar admitted in evidence, the last entry in the registry relating to the property is of August 14, 1922, and refers to the record of a lease contract between José Toro Ríos and his wife, of one part, and Central Pasto Viejo, of the other. The following is stated therein: . . . . "The undivided half is affected by the mortgage . . . . José Toro Ríos . . . . has recorded in his name the undivided half . . . . leased the said condominium of the undivided half. . . . ."

This being so, how is it explained that in the sale by the Recurd spouses to the Bustelo spouses and in the sale by the latter to the Roig spouses instead of referring to condominiums a property of 69 acres was described and sold? We have already said that the documents in which those

contracts are set out have not been recorded in the registry. The explanation of that fact appears from the following evidence:

The plaintiff presented in evidence, without objection by the defendant, a plan drawn in April of 1912 by surveyor M. Fuentes Morales. A foot-note made by the surveyor thereon is as follows:

"Plan of the Rosario property—Owner's: José Toro Ríos of the part of 108.881 acres lying east of the dividing line A. B. C. and Miguel Bustelo and Antonio Torres of the part of 66.968 acres lying west of the said line. . . . ."

Judging by the plan, the division was made in two parts —one for Toro Ríos and the other for Bustelo and Torres.

Surveyor Fuentes was called as a witness and identified the plan drawn by him. He testified that he did the work by order of José Toro Ríos who paid him his fee; that Bustelo had nothing to do with it; that the "dividing line" referred to in his plan followed a line of stakes and wire that existed.

And when defendant Toro Ríos testified as a witness he identified a certain document appearing in a copying book belonging to him and reading in part as follows:

"In the city of Humacao, P. R., the 29th day of October, of one part María Frías Mandry, married to Luis Recurt, both adults and residents. of this city, and of the other part, José Toro Ríos, of the same personal circumstances, agree to execute this private contract for the compromise of division of farm properties on the following bases:

"1.—María Frías agrees to take the part that belongs to her in the property called Rosario in the upper part of it so that it will be west of a dividing line running from the road of Anton Ruiz as near as possible to the boundary line of the property of José Rodríguez and, passing east of the house, ending on the boundary line of the property of Emilio Faura. This line shall be run as straight and when past the house shall form a triangle towards the west or towards the east, according as the irregular polygon may be greater or less than what belongs to María Frías in the property.

''2.—In this same polygon shall be included also what belongs to the heirs of Rosario Mandry whose shares have not been granted to José Toro Ríos.

''The house shall be on the piece of María Frías without any recompense.

''The rest of the 'said property shall belong to the other joint owner, José Toro Ríos.''

Then he was interrogated by the attorney for defendant Roig as follows:

''From this document do you know whether the person who made the contract with you was in possession of the part of that property? —I do not know positively, because I had leased my part to different factories—then to the Porto Rico Sugar Company, later to the Borinquen Sugar Company and now to the Pasto Viejo.

''But do you know whether by virtue of this document the person who contracted with you was in possession of the property?—María Frías, yes.''

After several objections and exceptions the witness answered a question of the attorney for the plaintiff as follows:

''Do you know whether she had the title to all of the rest of the property allotted to you?— Not absolutely. I can refresh my memory with the date on which each one executed the deed with reference to that property if I am shown some document or something of the kind, but otherwise I do not remember.''

It is unquestionable that the evidence shows that there was a beginning of the division and that with regard to co-owners Toro Ríos and the Recurd spouses there certainly would have been no difficulty; but the evidence shows also that there was another co-owner, Torres, who took no part in the contract (we were going to give the date of the contract but the record does not show it) between Toro Ríos and the Recurd spouses, nor in the plan drawn by order of Toro Ríos in 1912. And it is not possible to divide lawfully a property held in common without the participation of all of the co-owners.

This being so, it necessarily follows that the trial court did not err in weighing the evidence as showing that the Rosario property was undivided and, therefore, that the plaintiff had proved that it was a co-owner of a common property which gave it a right of action for its redemption upon its being conveyed, as in this case, to a stranger, defendant Roig.

Let us now see whether or not the plaintiff can be subrogated to the place of Roig, the purchaser, under the conditions of the contract of sale between Roig and Bustelo.

On this point the trial court in its opinion says:

"5. It remains now to consider the question referring to the 'essential condition' that appears in the private contract of December 23, 1922, between the spouses Bustelo-Rodríguez and Roig-Guzmán in relation to the Rosario property which is the object of this action. Defendants Roig set up as a special defense in their answer the said essential condition and allege that it never could be complied with by plaintiff Central Pasto Viejo, Inc. It is true that it would be impossible for the plaintiff to comply with such an essential condition, because it depends upon the action of purchaser Roig Torrellas, and this court thinks that such essential condition should be considered as not forming a part of the said contract for the purposes of this action. To admit in cases of this kind allegations of existing conditions obstructing redemption would be to render illusory the right of redemption given by law. A contract of the nature and importance of that which gave rise to this litigation should have been set out, it seems, with the solemnities of a public deed so that no doubt could arise with regard to the certainty of its different stipulations. Hence, the evidence in such cases should be strong. And it appears to the court that the performance of such an essential condition, under the circumstances of this case, was not a real consideration for the sale of the Rosario property, for nothing was done in that sense. The land was not segregated from the Pitajaya property, nor was the public deed executed recordable in the registry of property, it being observed in this case that for the execution of the said deed, which should fix the date of the effectiveness of the lease and determine the conditions of the sale, no date was specified and the matter was left indefinite. However, as regards the lands of the Rosario property, defendant

Roig Torrellas took possession of them about December of 1922, as testified by his attorney in fact Antonio A. Roig.''

We believe that the district court went too far. According to the statute, redemption can take place only when the co-owner can be subrogated to the place of the purchaser *"with the same conditions stipulated in the contract."* The law guarantees the rights of all equally. The preference given to the co-owner is just. But it would be unjust that for securing that preference the ownership rights of the other co-owner should be limited and reduced to making only that kind of contract in which subrogation in the same conditions may be possible. The right of the co-owners to sell their interests under the most favorable conditions is absolute. The right of redemption also of the co-owners is limited by the very terms of the law. Only in case fraud is alleged and proved, or in the case of an unreasonable or imaginary condition foreign to the transactions of men, or other similar situation, can the opinion held by the trial judge be adopted and the condition be considered as not imposed. But in fact that is not the case here.

Now, although it may be and is necessary to conclude that the district court erred in stating the ground that it had for deciding the essential question indicated, its error does not carry with it the reversal of the judgment, because it is sustained by other grounds, as we shall see.

The plaintiff introduced in evidence a deed executed on May 23, 1923, or after this action was brought, by which Bustelo conveyed his rights and interests derived from the contract by which Roig acquired from Bustelo, among others, the property involved in this suit, and a clause of the said contract reads as follows:

"The price or consideration for this contract is the agreed sum of $78,440 distributed as follows: $2,000 as a bonus or consideration for the grant of rights and interests, lease and option to purchase that the Bustelo-Rodríguez spouses make to the Central Pasto Viejo, Inc., which sum the said Bustelo-Rodríguez spouses are paid upon

the signing of this deed in cash and to their entire satisfaction and for which they give to the said corporation the most formal receipt and effective release.''

Bustelo had a right to sell and did sell to Roig on the conditions that he considered the most favorable to him. The Central Pasto Viejo had a right to redeem if it could be subrogated in the same conditions. As regards the cash price there was no difficulty. The difficulty existed with respect to the special condition. Clearly the Central Pasto Viejo was not in a position to lease to Bustelo the land that belonged to Roig, but from the moment that it bought from Bustelo his right to the lease the difficulty was eliminated and its right to redeem must be recognized.

Finally we shall take up the question of the deposit. The defendant-appellant contends that it was not well made because the value of the property sold was greater than the $12,000 deposited with the clerk of the court. We have already said that there is a difference with regard to the real area of the property, and if the area be based on that indicated by the plan which was accepted by the defendant, the amount deposited seems to be sufficient. There is another circumstance that favors the action taken by the plaintiff and that is that the sale by Bustelo to Roig does not fix the area absolutely and makes the price subject to a survey of the land to be made in the future. Then there is the contract between the plaintiff and Bustelo of May 23, 1923, to which reference has been made.

The judgment appealed from is

*Affirmed.*

Justices Aldrey, Hutchison and Franco Soto concurred.

Mr. Justice Wolf took no part in the decision of this case.